which it was to be used, drilled to receive the bolts or fittings which fastened it to the wall and to permit the fastening of vases, name plates, etc., and, in some cases, carved with names or other data.

There does not seem to be any doubt but that the plaintiff ordered the marble at bar with the sole intention of using it ultimately as crypt shutters, but it is plaintiff's contention that, in its imported form, it consisted of nothing more than slabs of material the end use of which would be crypt shutters. On the other hand, it is the defendant's view that, in their imported form, the pieces of marble were blank crypt shutters, i.e., had been processed to the point where that appellation applied to them.

It seems clear from the evidence, however, that the only processes to which the marble had been subjected prior to importation, i.e., cutting to specific sizes and polishing on one surface, are processes which made rectangular slabs out of the original marble. There is some reference in the record to the fact that "the corners are cut" (Tr. p. 12) which, in the brief filed on behalf of the defendant, is said to mean that the pieces "have the corners trimmed off."

A reading of the remainder of the record, coupled with a perusal of the specifications of the merchandise as ordered (defendant's collective exhibit A), shows, however, that, as ordered and as imported, the merchandise consisted of nothing more than rectangular slabs of marble, cut to size and polished on one surface. In their imported condition, the articles had had nothing done to them which would characterize them as blank crypt shutters. The intent so to use them existed in the minds of the importer, but the articles themselves bore no indicia of that use.

While we do not think that it would be necessary to completely finish the articles at bar by trimming, drilling, and carving before they could be crypt shutters, nevertheless, in order to be taken out of the category of slabs and put into the category of marble, wholly or partly manufactured into articles, there should be some physical indication apparent on the slabs themselves of appropriation to that use. No such indication appears.

We are of the opinion that the facts in this case are sufficiently analogous to those in the recently decided case of *Selectile Co., Inc., et al.* v. *United States*, protests 58/21276, etc., decided September 11, 1961, 47 Cust. Ct. 66, C.D. 2281, as to warrant the application of the rule there followed.

The protest claim for duty at the rate of 7 cents per superficial foot under paragraph 232(b) of the Tariff Act of 1930, as modified, is, therefore, sustained, and judgment will issue accordingly.

BEFORE THE SECOND DIVISION, OCTOBER 10, 1961

**No. 66135.**—Raleigh Industries of America, Inc. *v.* United States, protests 312619-KS and 326168-KS (Minneapolis).

Opinion by LAWRENCE, J. In accordance with stipulation of counsel that the merchandise and issues herein are similar in all material respects to those the subject of *United States* v. *Schmidt Pritchard & Co. et al.* (47 C.C.P.A. 152, C.A.D. 750), the claim of the plaintiff was sustained.

No. 66136.—Korlis, Limited, and Metasco, Inc. *v.* United States, protests 329313–KS and 59/29757–S (Tampa).

Opinion of LAWRENCE, J. In accordance with stipulation of counsel that the merchandise and issues herein are similar in all material respects to those the subject of *United States* v. *Schmidt Pritchard & Co. et al.* (47 C.C.P.A. 152, C.A.D. 750), the claim of the plaintiffs was sustained.

No. 66137.—Hercules Div., Am. Machine & Foundry Co., et al. *v.* United States protests 59/31492–S, etc. (Portland, Oreg.).

Opinion by LAWRENCE, J. In accordance with stipulation of counsel that the merchandise and issues herein are similar in all material respects to those the subject of *United States* v. *Schmidt Pritchard & Co. et al.* (47 C.C.P.A. 152, C.A.D. 750), the claim of the plaintiffs was sustained.

No. 66138.—Metasco, Inc. *v.* United States, protests 60/2404–S, 60/10831–S, and 60/22168–S (Tampa).